IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANTHONY B. RYAN                                                            PLAINTIFF

V.                                          NO. 13-3069

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Anthony B. Ryan, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

This case is before the Court as a result of the undersigned's opinion and judgment dated December 21, 2011, wherein the matter was remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). (No. 10-3062, Docs. 12, 13). Plaintiff had filed an application for DIB on September 8, 2004, alleging an inability to work since February 1, 1984, due to lower back pain. Administrative hearings were held on March 6, 2007 and December 13, 2007. In that case, by written decision dated February 6, 2008, the ALJ found that during the relevant time period, February 1, 1984 through December 31, 1984, Plaintiff retained the residual functional capacity (RFC) to perform medium work with certain

-1-

limitations. The undersigned reversed and remanded the case, directing the ALJ to give appropriate weight to Dr. McCornack's assessment and to re-evaluate Plaintiff's RFC, and to specifically list all of Plaintiff's limitations in a properly prepared hypothetical question to the Vocational Expert (VE). (No. 10-3062 , Doc. 12 ).

The case now before the Court arises as a result of remand, when a hearing before the ALJ was held on October 23, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 906-929). By written decision dated April 5, 2013, the ALJ found that during the relevant time period, Plaintiff suffered from the following severe impairments - back disorder and respiratory disorder (COPD). (Tr. 829). However, the ALJ also found that Plaintiff's conditions were not severe enough to meet or medically equal one of the impairments listed in Appendix I, Subpart P, Regulation No. 4. (Tr. 830). The ALJ found that through the date last insured (December 31, 1984), Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except as follows: The claimant can frequently lift and/or carry less than ten pounds and occasionally ten pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of at least two hours in an eight hour workday. The claimant can occasionally climb, balance, crawl, kneel, stoop, and crouch. He must avoid hazards including unprotected heights and moving machinery.

(Tr. 830). With the help of a VE, the ALJ determined that during the relevant time period, Plaintiff would not have been able to perform any past relevant work, but would have been able to perform work as charge account clerk, nut sorter, and telephone order clerk. (Tr. 833-834).

Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 15, 16).

AO72A
(Rev. 8/82)

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ failed to fully and fairly develop the record; and 2) The ALJ's decision was not supported by substantial evidence. (Doc. 15).

####   A.   Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ erred in not acquiring testimony of a medical expert to determine Plaintiff's RFC from February of 1984 through December of 1984 in light of his severe impairments.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering

additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-cv-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

In its previous opinion, the undersigned noted that the ALJ relied, in part, upon the Physical RFC Assessment completed by a non-examining physician, Dr. Ronald Crow, dated March 2, 2005, who found that the medical records supported a projected medium RFC on the date last insured. In this case, the ALJ complied with the directives of the undersigned in its remand order by more fully discussing the assessment given by Dr. E. Bruce McCornack, of Orthopaedic Associates, Inc., on July 18, 1985, as it was closer in time to the relevant time period. In his discussion of Dr. McCornack's opinion, the ALJ noted that Dr. McCornack provided additional analysis of the stability of Plaintiff's conditions, adding that Plaintiff needed to increase physical activity and exercise. The ALJ gave significant weight to Dr. McCornack's

findings, and also noted that Dr. Crow's findings did not substantially conflict with those of Dr. McCornack. (Tr. 832).

It is noteworthy that on April 17, 1984, Dr. Jose S. Arroyo noted that Plaintiff had experienced considerable improvement with physical therapy and particularly with the use of a back swing. (Tr. 637). He noted that Plaintiff's left sciatic pain had greatly subsided although he was still experiencing pain, and that as long as Plaintiff continued improving, there would not be need for surgery. (Tr. 637). Dr. Arroyo stated that Plaintiff was "still unfit for duty for another 30 days at least." (Tr. 637). Also on April 17, 1984, Dr. Richard M. Byrne examined Plaintiff, and reported that Plaintiff stated he felt "pretty good" and that his main symptoms were an aching across the buttocks and down the left leg. (Tr. 630). Dr. Byrne's impression was recurrent herniated lumbar disc, L4-5, left, and he concluded that Plaintiff did seem to be slowly responding to conservative measures. (Tr. 630).

On May 16, 1984, Plaintiff was seen by Dr. Gunn, who noted he had significant limitation of movement in all directions. (Tr. 639). On July 17, 1984, Dr. Gunn performed a L4-5 discectomy, with fusion. (Tr. 141). On August 1, 1984, Dr. Gunn reported that Plaintiff was not released to return to work until December 1, 1984. (Tr. 651). On August 30, 1984, Dr. Gunn noted that Plaintiff was "really doing pretty well for the time involved." (Tr. 640). He noted that Plaintiff did have some occasional back pain and bilateral leg pain, but on the whole, Dr. Gunn thought he was doing well. (Tr. 640). By October 11, 1984, Dr. Gunn noted that Plaintiff was complaining of some back pain, but had equal DTR's (deep tendon reflexes), and had satisfactory sensation. (Tr. 640). Dr. Gunn noted that Plaintiff had some diffuse weakness, but he did not find any obvious cause for this, and was going to direct Plaintiff to physical therapy

on his lower extremities. (Tr. 640). At that time, Plaintiff did not want any pain medication. (Tr. 640). In a physical therapist's note in May of 1984, Plaintiff stated his back felt much better with "hardly any pain at all," but by December 3, 1984, Plaintiff was complaining of increased back pain. (Tr. 681).

On November 8, 1984, upon examination by Dr. Gunn, Plaintiff had equal DTR's, had some tenderness in the region of the donor site of the "b/g on the right side," had a mildly positive SLR on the left and slight weakness of quadiceps and abductor's on the left, but was having physical therapy and felt that it was improving. (Tr. 640). A November 8, 1984 certificate of physician indicated that Plaintiff was "unable to perform his duties from 2/27/84 through 3/1/85 because the employee was under his professional care for an injury or illness." (Tr. 517). However, on December 20, 1984, Dr. Gunn reported that Plaintiff did not seem to have significant pain in his legs, and had equal DTR's, downgoing toes and there was no wasting of the quadriceps. (Tr. 649). There was adequate muscle strength, and in particular, Dr. Gunn did not find any real weakness of the left quadriceps when compared with the right. (Tr. 649). Dr. Gunn indicated at that time that he suggested to Plaintiff that the time was getting near when he would be able to return to work. (Tr. 649).

By January 31, 1985, Dr. Gunn reported that Plaintiff's medical status showed improvement, and that he continued to improve but perhaps a little more slowly than some patients.(Tr. 653). Dr. Gunn noted that Plaintiff was on a self-directed exercise program with increasing walking, and believed there was a distinct possibility that Plaintiff would be able to return to his previous occupation, "but it must be accepted that his back was not entirely normal before the operation." (Tr. 653). The Court believes the record suggests that when opining as to

whether Plaintiff could return to work, it is reasonable to assume that Dr. Gunn was referring to Plaintiff's past work as an able seaman, which was heavy work. Dr. Gunn told Plaintiff that he believed Plaintiff should make an attempt to return to work on March 1st, and that Plaintiff felt that his back was satisfactory but he was having trouble walking up and down stairs. (Tr. 653). In a February 22, 1985 report, Dr. Gunn indicated that Plaintiff was not released to return "to work" until 4/1/85. (Tr. 656). On March 25, 1985, Dr. Gunn reported that Plaintiff was not released to return "to work" until 5/1/85." (Tr. 659). Once again, the Court believes Dr. Gunn was referring to Plaintiff's past work as an able seaman.

On July 17, 1985, Dr. McCornack examined Plaintiff and reported that Plaintiff had been walking for exercise a half a mile a day. (Tr. 673). Dr. McCornack reported that Plaintiff's current medical status was that of status post op decompressive laminotomy disc excision, neurolysis of L5 nerve root and one level arthrodesis. (Tr. 675). He noted there was no clinical evidence of acute nerve root compression, and that Plaintiff was very unfit. (Tr. 675). Dr. McCornack thought Plaintiff was capable of returning to work, but did not feel that he could adequately perform the duties of his previous position of able seamen, and that restrictions would include limitations on continuous bending and heavy lifting. (Tr. 675). He further opined: "It is possible that eventually he might be able to return to work as an able seaman but I think it would be in his long term best interest to reduce activities involving continuous bending and heavy lifting, simply because of the loss of one mobility of segment in his lumbar spine. " (Tr. 675). On July 18, 1985, Dr. McCornack completed the Physical Capacities Evaluation, noting that Plaintiff could sit for four hours; stand for four hours; and walk for six hours. (Tr. 526). He further found Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 35

pounds; could occasionally bend, squat, climb, twist, and crawl; could use his hands for repetitive action such as simple grasping with both hands, pushing and pulling with both hands, and fine manipulating with both hands, could use his feet for repetitive movements with both feet; and that as Plaintiff was in very poor shape, he needed activity increase, weight loss, and exercise. (Tr. 526).

The Court is of the opinion that the existing medical sources, as referenced above, did contain sufficient evidence for the ALJ to make a determination that during the relevant time period, Plaintiff would have been capable of performing sedentary work with certain limitations. The ALJ had before him the Physical RFC Assessment of Dr. Crow dated March 2, 2005, where Dr. Crow opined that Plaintiff would be able to perform medium work, as well as Dr. Gunn's records during the relevant time period, and Dr. McCornack's physical abilities evaluation dated July 18, 1985. To obtain another Physical RFC Assessment at this time from a physician who would have to review the medical records and speculate on what Plaintiff's capabilities were during the relevant time period is not necessary, as the ALJ already had such an opinion before him.

In addition, in Vocational Interrogatories completed by VE Larry Seifert on January 26, 2013, in accordance with the undersigned's remand order, the ALJ set forth a hypothetical question that sufficiently contained the Plaintiff's limitations which were supported by the record, and based upon the answers by the VE, found that Plaintiff would be able to perform such sedentary jobs as charge account clerk, nut sorter, and telephone order clerk. (Tr. 901-903).

Accordingly, the Court finds that there is substantial evidence to support the fact that the ALJ did not fail to fully and fairly develop the record.

    **B.**    **Substantial Evidence:**

Plaintiff cites general case law relating to construction of the Social Security Act, and argues that there is materially nothing to separate this opinion form that rendered previously. The Court disagrees, and finds that based upon the foregoing discussion, there is substantial evidence to support the ALJ's decision.

**IV.**    **Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 4th day of September, 2014.

                                                    /s/ *Erin L. Setser*
                                                  HONORABLE ERIN L. SETSER
                                                  UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)